**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JACKIE DIANE ALLEN and** § | | |
| **RICHARD B. TOBIAS,** § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | No. 3:06-CV-1361-M-BH | |
| § | | |
| **DAVID TRAVIS, ANTHONY W.** § | | |
| **SCHWIGER, and KEN PRICE,** § | | |
| Defendants. § | **Referred to U.S. Magistrate Judge** | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b) and an *Order of Referral* filed July 29, 2009, *Defendant Kenneth Price's Motion For Summary Judgment* ("MSJ" or "Defendant's Motion") filed July 22, 2009, (doc. 64), was referred for recommendation or determination. Also before the Court are motions for hearing, to compel discovery, to hold Defendant Price in contempt, and for summary judgment or interlocutory summary judgment against Defendant Price, all included within *Plaintiff Tobias' Response to Defendant Price' [sic] Motion for Summary Judgment* ("Tobias Resp."), filed August 10, 2009, (doc. 73), and a *Motion for Leave to File a Reply to Defendant Kenneth Price's Reply* ("Mot. for Leave"), filed by Tobias September 1, 2009, (doc. 78).

Based on the relevant filings and applicable law, the motions for leave, for hearing, and to compel discovery are **DENIED**; Defendant's motion for summary judgment should be **GRANTED**; and Plaintiff's motions for summary judgment and contempt should be **DENIED**.

**I. BACKGROUND**

On July 28, 2006, Jackie D. Allen ("Allen") and Tobias (collectively "Plaintiffs") filed this civil action against two United States Deputy Marshals and a Court Security Officer ("CSO") based on events that occurred in connection with a previous lawsuit against them in this Court. *See*

*Groden v. Allen*, No. 3:03-CV-1685-R (N.D. Tex. 2003). In that action, Robert J. Groden ("Groden") sued Allen and Tobias for copyright infringement.[1] *See id.* (doc. 18).[2] He obtained a significant jury award against Plaintiffs jointly and severally, but they attempted to avoid complying with the judgment in the *Groden* matter despite specific Court orders. *See id.* (docs. 196, 206, 264, 266, 268, 270-71, 492). After "*several* contempt hearings and *several* attempts to compel . . . compliance with the permanent injunctive order" entered in the case, both Allen and Tobias were found in civil contempt of court and sentenced to six months confinement in June 2005. *See id.* (docs. 283, 369, 423). In October 2005, the Court described Tobias as "a vexatious and shameless litigant who, over the years, has lied to this Court, has flagrantly disobeyed . . . orders, and who has tested its good patience by not turning-over . . . copyrighted materials as required by the permanent injunction entered on June 22, 2004". *Id.* (doc. 328).

After Allen was taken into custody in December 2005, the Court held a hearing and found that she had not yet purged herself of contempt. *Id.* (doc. 369). On January 3, 2006, Tobias was released from custody after he had served six months in accordance with the contempt order. *Id.* He thereafter moved for leave to visit Allen while she was confined so that he could provide her legal consultation. *Id.* The Court denied him leave on March 20, 2006, because Tobias was a non-attorney and no right to claim that he could serve has her attorney. *Id.* Due to continued non-compliance with the *Groden* judgment, the Court held a second contempt hearing for Allen on March 28, 2006. *See id.* (doc. 381).

---

[1] Allen and Tobias defended themselves *pro se*.

[2] The documents in Cause No. 3:03-CV-1685-R are matters of public record. In addition, the CSO has attached copies of documents 196, 283, 328, 369, 401, 423, 492, 512, and 517 as exhibits to his appendix in support of his motion for summary judgment.

The CSO performed assigned court security officer duties during Allen's hearing. Court security officers are responsible for security-related functions, including following courtroom security procedures and implementing judicial directives to ensure the safe and orderly courtroom operations. (*See* Decl. Kenneth Price ("Def. Decl.") ¶ 2, attached as Ex. 1 to App. Supp. MSJ).) As part of their duties, court security officers restrict access within the courtroom. (*Id.* ¶¶ 5-6.)

When Tobias arrived an hour early for Allen's 10:00 a.m. hearing, the CSO informed him that he could not enter the courtroom until 9:30 a.m. (*See* Aff. Richard Tobias March 28, 2006 Hearing dated April 12, 2006, ("Tobias Aff.") at 1-2 (attached as Ex. 2 to App. Supp. MSJ)). After an initial protest, Tobias accepted those instructions, and asked the CSO to see whether the judge would permit him to bring a tape recorder into the courtroom so that Tobias could play a tape. (*Id.* at 2.) When Tobias returned at 9:35 a.m., the CSO informed him that he had contacted the judge, and Tobias would not be allowed to bring a tape recorder into the courtroom. (*Id.*) During the pre-hearing meeting with the judge, the CSO received "specific instructions regarding the admonishments [the CSO] was to give to Mr. Tobias" regarding acceptable courtroom conduct, "and the steps [the CSO] was to take to remove Mr. Tobias from the courtroom if he was disruptive." (Def. Decl. ¶ 4.)

The CSO informed Tobias that he was not permitted to sit at counsel's table during Allen's hearing and must sit in the public viewing area.[3] (*See id.* ¶ 5; Tobias Aff. at 2; Supp. Aff. Richard

---

[3] Although Tobias was a *pro se* defendant in the same action as Allen, he had no legitimate basis to sit in the area reserved for parties and their attorneys because (1) the hearing was a contempt hearing for Allen; (2) Tobias had fully served the detention ordered for his contempt; (3) the hearing was collateral to the underlying civil action against Allen and Tobias jointly; and (4) Tobias was not counsel for Allen, and had been informed that he could not act as her attorney. While Tobias contends that he could sit with Allen as a witness, witnesses are not permitted beyond the public area of the courtroom until actually called as a witness or otherwise called before the Court. Neither circumstance was present when Tobias was directed to sit in the public viewing area.

3

Tobias about March 28, 2006 Hearing dated August 10, 2009, ("Supp. Tobias Aff.") at 3 (attached to Tobias Resp.).) He was also instructed to not stand up, wave, or make objections. (Tobias Aff. at 2.) Pursuant to the Court's directives, the CSO warned him that he would be removed from the courtroom should he become disruptive. (*Id.*; Def. Decl. ¶ 5.) Tobias repeatedly questioned the CSO about the source of the orders and repeatedly insisted that he was a *pro se* defendant who was entitled to sit at the defense table, and had all the rights of an attorney in defending his case. (Tobias Aff. at 2-3.) Although the CSO informed Tobias that the instructions came directly from the Court, Tobias continued to object and, according to Tobias, the CSO told him to shut up and that one more word would result in his ejection from the courtroom. (*Id.*)

The CSO was thereafter informed that Allen was being brought into the courtroom. (Def. Decl. ¶ 6.) Because the CSO is "responsible for securing the courtroom when a prisoner in custody such as Ms. Allen is present,"[4] the CSO prepared for her arrival by monitoring access to the non-public area of the courtroom. (*Id.*) Around this time, the court reporter entered the courtroom. (Tobias Aff. at 3.) Tobias waved and said hello to the court reporter, which according to Tobias, prompted another warning from the CSO about waving and speaking in the courtroom, and another protest by Tobias about sitting in the back of the courtroom before the CSO directed him to leave the courtroom. (*Id.* at 3; Supp. Tobias Aff. at 5.) Tobias stated that he needed to speak to the court reporter about transcripts, but the CSO would not listen. (Tobias Aff. at 3.) According to the CSO, when he saw the attempt to speak to the court reporter,[5] he directed Tobias to leave the courtroom because the CSO had "determined that Mr. Tobias was attempting to violate courtroom security

---

[4] At the time of the hearing, Allen was a prisoner in custody. (*See* Def. Decl. ¶ 3; Tobias Aff. at 1.)

[5] The parties disagree as to whether Tobias stood up or attempted to approach an unauthorized area. (*Compare* Def. Decl. ¶¶ 5-6 *with* Supp. Tobias Aff. at 3-4.) This disagreement is not material to the outcome in this case.

4

procedures and [the Court's] orders, after [he] had already given [Tobias] explicit directives regarding his courtroom behavior." (Def. Decl. ¶ 6.) The CSO avers that at all times, he acted in accordance with the Court's directives and "established security procedures which are designed to ensure the safety of the Court, its staff, and prisoners in custody such as Ms. Allen." (*Id.*)

After the CSO asked Tobias to leave the courtroom without physical altercation, and Tobias peacefully left, Allen's contempt hearing proceeded in his absence. (*See* Tobias Aff. at 8; Def. Decl. ¶¶ 6-7.) At the conclusion of the hearing, the Court found that Allen was "still in contempt of Court." *See Groden*, No. 3:03-CV-1685-R (doc. 381). Following the hearing, the presiding judge issued a memorandum to all court security staff on April 3, 2006, in which he noted that Tobias "was ordered removed from my courtroom for being disruptive at his codefendant's contempt hearing." (App. Supp. MSJ at 4.) Approximately a month later, the judge recounted the events of March 28, 2006, in a written order:

> On March 28, 2006, the Court held a hearing on defendant Allen's contempt. Before the proceeding began, a [CSO] notified the Court, in chambers, that defendant Tobias was being disruptive and was demanding to present evidence at his co-defendant's contempt hearing. The Court asked the CSO to inform Mr. Tobias that the Court would call on him if it wished to hear from him. The CSO later notified the Court that he had informed Mr. Tobias of the Court's instructions but subsequently removed Tobias for persisting in disruptive and argumentative conduct.

(*Id.* at 40.) In that order, the judge also identified other unacceptable conduct by Tobias since his release in January 2006: (1) unannounced appearances in chambers; (2) "a weekly routine of calling the Court's law clerks demanding information on his pending motions"; and (3) interposing himself in a court-ordered turnover of infringing items by a third party. (*Id.*)

Plaintiffs initially asserted four claims against the CSO (*see* Original Compl. ("Compl.") at 1-6) based on the events at the hearing, but only the alleged denial of access to courts arising under

5

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) remains pending (*see* Order Accepting Findings, Conclusions, and Recommendation, doc. 60). Plaintiffs claim that the CSO unlawfully removed Tobias from the hearing without an order from the presiding judge. (Compl. at 5.)

On July 22, 2009, the CSO moved for summary judgment based upon absolute judicial or quasi-judicial immunity and qualified immunity. (*See* Br. Supp. MSJ ("Def. Br.") at 9-18.) On August 10, 2009, Tobias filed a response in which he opposes summary judgment and asks or moves for a hearing, to compel discovery, to hold the CSO in contempt, and summary judgment or interlocutory summary judgment against the CSO. (*See* Tobias Resp. at 1, 16-17, 24, 27.) The CSO filed a reply in which he also responded to the Tobias motions for contempt and for summary judgment. (*See* Def.'s Reply at 1-6.) Tobias has sought leave to file a reply to the CSO's reply.[6] (*See* Mot. for Leave.) Allen has filed no response to the CSO's motion.[7]

## II. HEARING

Tobias moves for a hearing so that he can provide relevant testimony regarding his opposition to the motion for summary judgment. (Tobias Resp. at 16.) Pursuant to the local rules of this Court, oral argument on a motion will not be held unless otherwise directed by the presiding judge. L.R. 7.1(g). Neither the District Judge's scheduling order nor any order by this Court provides for oral argument on CSO's motion, nor has Tobias shown good cause for a hearing. The motion for

---

[6] To the extent Tobias seeks to file a surreply relating to the CSO's motion for summary judgment, the motion is DENIED. The local rules do not allow surreplies as a matter of course. *Underwood v. E. Tex. State Univ.*, No. 3:96-CV-2739-G, 1998 WL 223695, at *1 (N.D. Tex. Apr. 28, 1998). Tobias has provided no adequate basis for a surreply. To the extent that Tobias seeks leave to file a reply to the CSO's response to the motions within Tobias's response, he does not need to seek leave to file a reply, and the motion is DENIED as unnecessary. Any reply relating to his motions will be considered.

[7] Several court documents mailed to Allen have been returned as undeliverable. (*See* Docs. 70, 77 (indicating that docs. 67, 68, 69, and 75 have been returned).)

hearing is DENIED.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255, neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc);

*Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### IV.  IMMUNITY

The CSO claims that his actions at the March 28, 2006 hearing are protected by absolute judicial or quasi-judicial immunity and qualified immunity. (*See* Def. Br. at 9-18.)

#### A. **Judicial or Quasi-Judicial Immunity**

"Absolute immunity denies a person whose federal rights have been violated by a government official from obtaining any type of remedy, regardless of the conduct." *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000). The United States Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745-46 (1982). Judges are immune from suit for damages resulting from any judicial act, unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*,

8

502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978). Absolute immunity also extends to others who perform judicial functions in accordance with a court directive. *See Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (holding that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion"); *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996) (holding that officials acting within the scope of their authority enjoy absolute immunity "from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction"); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981) (holding that clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction"). The reasoning for such extension is that "court personnel should not serve as a lightening rod for harassing litigation." *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002). Nevertheless, the scope of immunity in the extended form is limited by the scope of the judicial order. *Id.*

In this case, the CSO claims that he is immune from suit based on his actions in removing Tobias from the courtroom for disruptive behavior. Judges act within their jurisdiction and are entitled to absolute immunity when they "maintain the decorum and security of their courtrooms and the courthouses in which those courtrooms are located." *Huminski v. Corsones*, 396 F.3d 53, 77-78 (2d Cir. 2005). Likewise, when a court security officer carries out a judge's direction to remove a disruptive party or spectator from the courtroom, the officer is entitled to absolute judicial or quasi-judicial immunity for such actions. *Cf. Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (finding a police officer to be a de facto bailiff for purposes of immunity); *Leonard v. Marra*, No. 5:05-CV-262 (CAR), 2005 WL 2319710, at *4 (M.D. Ga. Sept. 22, 2005) (holding that United

States Marshals who follow court directives to bar an individual from the courthouse are protected by immunity for such actions); *Hansen v. Wahl*, No. 89-4054-R, 1990 WL 5730, at *1 (D. Kan. Jan. 16, 1990) (holding that official who removed an individual from a courtroom and incarcerated him on orders from a judge was protected by immunity).

Once a defendant asserts the affirmative defense of immunity, the burden is on the plaintiff to rebut it. *Beck*, 204 F.3d at 633. Defendants have no obligation to present any evidence to satisfy their summary judgment burden for immunity claims pled in good faith. *Id.* Here, the CSO has provided evidence to support his claim of absolute immunity. Based on this evidence, it is undisputed that the CSO was acting within the scope of his duties as a court security officer. The CSO has specifically averred that he was acting on express orders from the judge presiding over the March 28, 2006 hearing to remove Tobias should he become disruptive. (App. Supp. MSJ at 1-3.) He has submitted written statements from the judge that support his averments. (*Id.* at 4, 40.) He has provided context showing a need for the specific instructions to the CSO regarding Tobias. *See Groden v. Allen*, No. 3:03-CV-1685-R (N.D. Tex. 2003) (docs. 283, 328, 369, 423) (attached to appendix supporting motion for summary judgment). It is also undisputed that Tobias disregarded express directions of the CSO and engaged in argumentative behavior. The CSO's actions appear within the scope of the judicial orders given to him. In such circumstances, absolute immunity shields the CSO from liability for removing Tobias from the courtroom.

Tobias has not rebutted the assertion of absolute immunity. Although he disagrees that the CSO acted at the judge's direction, he has not directed the Court to any evidence in the record sufficient to rebut the asserted immunity or to establish a genuine issue of material fact for trial, and the Court has found none. He essentially argues that he cannot be constitutionally denied access to

court without a written order from the Court but provides no legal support for that proposition. (*See* Tobias Resp. at 1, 8.) However, the fact that the presiding judge did not restrict his access to the court on the record or through a written order is insufficient to rebut the good faith assertion of immunity or to counter the CSO's summary judgment evidence that the judge verbally ordered him to remove Tobias from the courtroom should he become disruptive. Tobias has presented nothing beyond speculation and conjecture that the CSO was not acting at the specific direction of the presiding judge. His conclusory allegations and unsubstantiated assertions do not satisfy his summary judgment burden.[8]

Tobias also tries to carry his burden and create a fact issue by claiming that he "was not disruptive by insisting and requesting to be seated at the defendant's tables." (Tobias Resp. at 24.) However, the mere fact that Tobias disagrees with whether his actions qualify as disruptive does not create a genuine issue of material fact for trial. The undisputed facts show that (1) Tobias was well known to the presiding judge as a vexatious litigant who was prone to disobey court orders and procedures; (2) prior to the March 28, 2006 hearing, the CSO met with the judge regarding Tobias at least in part because Tobias was exhibiting disruptive behavior; (3) the judge gave the CSO explicit directions regarding Tobias and expressly ordered the CSO to remove Tobias should he continue to be disruptive; (4) in accordance with the Court's directions, the CSO directed Tobias to sit at the back of the courtroom and not engage in disruptive conduct; (5) the CSO informed

---

[8] Tobias filed a twenty-seven page response to the motion for summary judgment that is almost entirely devoid of citation to the summary judgment record. While he cites generally to an eighty-eight page affidavit of fact previously filed in this action (doc. 34) and to exhibits that exceed ninety pages attached to his response to the motion for summary judgment (*see*, *e.g.*, Tobias Resp. at 5, 12, 20), he has not complied with L.R. 56.5(c) (requiring specific citations to appendix) or 56.6 (requiring separate appendix for parties who rely on affidavits to oppose a motion for summary judgment). Parties do not carry their summary judgment burden by citing generically to submitted documents. In addition, although the courts do not search for evidence in the record to support a party's opposition to summary judgment, nothing in the summary judgment record provided rebuts the assertion of immunity or creates a genuine issue of material fact as to whether the CSO is protected by absolute immunity.

11

Tobias that the directives came from the Court; (6) despite the directives, Tobias repeatedly informed the CSO that he had a right to sit at counsel's table and ignored the CSO's directives; (7) the CSO asked Tobias to leave the courtroom without physical altercation; and (8) Tobias peacefully left. Under these undisputed facts, no reasonable jury could find that the CSO was acting beyond the scope of the judicial orders given to him. Consequently, no reasonable jury could return a verdict for Tobias. Tobias has not rebutted the assertion of immunity.

Because there is no genuine issue of material fact as to whether the CSO enjoys absolute immunity from the sole remaining claim against him, his motion for summary judgment should be granted on this basis.

## B. **Qualified Immunity**

The CSO has also made a good faith assertion that he is protected by qualified immunity.[9] A governmental employee[10] who is sued for a constitutional violation pursuant to *Bivens* may assert the affirmative defense of qualified immunity. *See Bunting v. Mellen*, 541 U.S. 1019, 1022 (2004). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which an objectively reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity provides protection when conduct is not covered by absolute immunity. *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981). The doctrine protects "all but the plainly incompetent or

---

[9] Although Tobias has not rebutted the CSO's assertion of absolute or quasi-judicial immunity, the Court considers qualified immunity in the alternative.

[10] The Court previously found that the CSO is a federal governmental actor for purposes of *Bivens*. (*See* Findings, Conclusions, and Recommendation (doc. 58); Order Accepting Findings, Conclusions, and Recommendation (doc. 60).)

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Because qualified immunity confers immunity from suit, not merely a defense to liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, a court conducts a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'...is now advisory."). If the court answers both the constitutional violation and qualified immunity questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden on a motion for summary judgment, the plaintiff must produce evidence showing that a defendant violated the plaintiff's constitutional rights and that the violation was

13

objectively unreasonable. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

Tobias has presented no evidence to show that the CSO violated his constitutional rights by removing him from the courtroom for disruptive conduct. As discussed previously, there is no genuine issue of material fact as to whether the CSO was acting within the scope of his duties. There is also no material dispute regarding whether Tobias engaged in conduct that is properly characterized as disruptive. Although Tobias may have stated a plausible access-to-court claim to survive CSO's prior motion for judgment on the pleadings, *see Allen v. Travis*, No. 06-CV-1361-M-BH, 2008 WL 4602734, at *4 (N.D. Tex. Oct. 10, 2008) (accepting recommendation of Mag. J.), he has no absolute right to access to the court in whatever manner he chooses. Judges may constitutionally "impose reasonable limitations on access" to the courts. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n.18 (1980). Neither parties nor spectators have a right to disrupt judicial proceedings, access restricted areas of the courtroom, or attempt to improperly insert themselves into the proceedings. *Cf. Illinois v. Allen*, 397 U.S. 337, 342-43 (1970) (recognizing that even criminal defendants may lose their right to be present at trial by engaging in disruptive conduct). Under the facts of this case, the presiding judge placed reasonable limitations on Tobias, and when Tobias exhibited disruptive behavior prior to the March 28, 2006 hearing, the CSO directed him to leave the courtroom per the judge's instructions. Given these facts, Tobias has not shown that his removal from the courtroom violated his constitutional rights. Additionally, even if the Court assumed that the removal violated his constitutional rights, Tobias has not shown that the CSO's actions were objectively unreasonable given the circumstances presented. In the situation faced by the CSO, it would not be clear to a reasonable officer that it was unlawful to direct Tobias to leave the courtroom. For these reasons, the CSO is protected by qualified immunity.

Because there is no genuine issue of material fact regarding whether the CSO is protected by absolute judicial or quasi-judicial immunity or qualified immunity, summary judgment should be granted for the CSO on the sole remaining claim against him. The granting of summary judgment for the CSO naturally means that summary judgment should be denied for Tobias.

## V. DISCOVERY

Within his response the motion for summary judgment, Tobias also moves to compel the production of "video recordings made by the courtroom security cameras and other documents needed for trial and summary judgment." (Tobias Resp. at 16, 24.) He contends that if Defendant "has obtained the video recordings they need to be produced." (*Id.* at 17.)

Tobias does not allege that he has he has served discovery requests on the CSO pursuant to the Federal Rules of Civil Procedure that have not been answered.[11] The Court therefore liberally construes Tobias's motion to compel as invoking Fed. R. Civ. P. 56(f). When a party believes it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment, Rule 56(f) is the proper remedy. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991). Rule 56(f) provides:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>   (1) deny the motion;

---

[11] To the extent that Tobias seeks to compel responses to discovery served on anyone other than the CSO, he has likewise not identified properly submitted and served discovery requests to which he seeks a response. The docket reflects that Tobias filed *Plaintiff Richard Tobias' Second Request for Production to David Travis and the U.S. Marshal Service [sic] and to the Custodian of Records in Charge of Keeping the Security Video Recordings of Judge Buchmeyer's Courtroom* (doc. 72), on the same day that he made the request to compel production within his summary judgment response. It is not clear, however, that this discovery request is the subject of the motion to compel contained within the response to the CSO's motion for summary judgment.

15

>> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
>> (3) issue any other just order.

Ordinarily, Rule 56(f) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). The Fifth Circuit does not impose a literal interpretation of Rule 56(f) upon *pro se* litigants. *Joseph v. City of Dallas*, No. 07-11235, 2008 WL 1976619, at *8 (5th Cir. May 6, 2008) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Int'l Shortstop*, 939 F.2d at 1266-67). However, at a minimum, a party must show: (1) why he needs additional discovery; and (2) how that discovery would likely create a fact issue that would defeat summary judgment. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999).

In this case, even assuming that a video recording exists, Tobias has not shown that it would likely create a material fact issue. The video would not reveal the instructions given to the CSO from the judge nor materially call into question the undisputed facts that the CSO followed judicial directions to remove Tobias from the courtroom should he behave disruptively. Consequently, the video would not create a fact issue as to whether the CSO is protected by absolute immunity. In addition, even with the video, Tobias would not be able to show that he suffered a constitutional violation. Because Plaintiff did not suffer a constitutional violation, he has not met his burden to show how further discovery would create a genuine issue of material fact. *See Stearns Airport*, 170 F.3d at 535; *RTC v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993). Accordingly, to the extent the motion to compel is seeks a continuance under Rule 56(f) motion, it is DENIED.

16

## VI.  CONTEMPT

In his response, Tobias also moves to hold the CSO in contempt for allegedly making perjured statements concerning whether Tobias remained seating at all times and whether he attempted to approach counsel's table prior to being removed from the courtroom by the CSO. (Tobias Resp. at 5, 8, 20-21, 26-27.)  Tobias also contends that the CSO has "now fabricated a prehearing communication" in which he was given specific instructions by the presiding judge. (*Id.* at 8.)

As a general matter, disputed facts do not necessarily rise to the level of perjury.  Moreover, as found herein, the undisputed facts of this case present an adequate basis to remove Tobias from the courtroom whether or not he remained seated at all times or whether he attempted to approach counsel's table.  The alleged perjury related to those disputed facts is immaterial to resolution of this action.  With respect to the alleged fabrication of the pre-hearing communication between the CSO and the presiding judge, Tobias has simply provided nothing to demonstrate the falsity of the CSO's specific, sworn statement regarding the instructions that the judge gave him.  The CSO's sworn statements are made on personal knowledge.  Tobias, on the other hand, relies on speculation and conjecture to contest the CSO's averments.  For all of these reasons, there is no basis to hold the CSO in contempt.  The motion for contempt should be DENIED.

## VII.  CONCLUSION

*Defendant Kenneth Price's Motion For Summary Judgment*, filed July 22, 2009, (doc. 64), should be **GRANTED,** and the motions for summary judgment and for contempt made in *Plaintiff Tobias' Response to Defendant Price' [sic] Motion for Summary Judgment*, filed August 10, 2009, (doc. 73) should be **DENIED**.  The Court should direct the Clerk of the Court to terminate the sole

17

remaining defendant and to close this action.

   **SO RECOMMENDED** on this 5th day of October, 2009.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE